IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**STATE AUTOMOBILE PROPERTY AND**
**CASUALTY INSURANCE COMPANY,**

       **Plaintiff,**

**v.**                                      **CIVIL ACTION NO. 2:09-0346**

**EDGEWATER ESTATES, INC.,**
**SUSAN O'NEIL, Individually and**
**SUSAN O'NEIL, as next friend and**
**guardian of K.H., a person under**
**the age of eighteen,**

       **Defendants.**

**MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT**

Pending before the court are the cross-motions for summary judgment of plaintiff State Automobile Property and Casualty Insurance Company (Doc. No. 18) and defendant Edgewater Estates, Inc., (Doc. No. 25). For the reasons set forth below, the court grants plaintiff's motion.

      **I.**    **Factual and Procedural Background**

Plaintiff State Automobile Property and Casualty Insurance Company ("State Auto") filed its complaint for declaratory judgment in this court on April 6, 2009, invoking the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. No. 1 at 1-2.) This suit arises from an action filed by defendant Susan O'Neil in the Circuit Court of Putnam County, West Virginia. (Id. at 2.) In that action, Ms. O'Neil alleges that

her minor child, K.H., was sexually abused by an employee of defendant Edgewater Estates, Inc., ("Edgewater"), identified as David Chapman. (Id.; Doc. No. 1 Ex. A.) Ms. O'Neil alleges that, in late 2004, Chapman moved into an apartment at Edgewater and became the property owner's "second in command," responsible for showing apartments to potential tenants and answering questions from current and potential tenants. (Doc. No. 1 Ex. A.) The underlying complaint further alleges that Chapman "had keys to the office, access to the computer and vacant residences." (Id.) In Count One of her complaint, Ms. O'Neil alleges that Edgewater "negligently allowed Mr. Chapman to act as its agent," and negligently failed to perform a background check on Mr. Chapman beforehand. (Id.) Count Two of the underlying complaint alleges that such negligence was the proximate cause of injury to O'Neil and her minor child. (Id.)

Edgewater carries a commercial general liability policy issued by State Auto, pursuant to which State Auto accepted the tender of defense and indemnity of the underlying action subject to a reservation of rights. (Doc. No. 1 at 2.) State Auto now seeks a declaration that the policy does not entitle Edgewater to a defense or indemnity for Ms. O'Neil's claims. Essentially, State Auto contends that the hiring of an individual – whether negligent or not – does not constitute an "occurrence" so as to trigger coverage under the policy, which defines "occurrence" as

"an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 2-3.)

On January 6, 2010, State Auto filed a motion for summary judgment on this basis, and argued alternatively that the policy's "intentional acts" exclusion prohibits coverage relating to a sexual assault, or that the policy's "expected or intended consequences" exclusion precludes coverage where the cause of action – negligent hiring – contains an element of foreseeability. (Doc. No. 19.) In its response and cross-motion, Edgewater stressed that Ms. O'Neil alleges negligence on its part, rather than an intention to hire someone who would commit sexual abuse. (Doc. No. 25.) Edgewater also denied that Mr. Chapman was ever an employee of the company, and noted that there are no records to support his ever having been employed by Edgewater. (Id. at 4-5 n.2.)

In her response to State Auto's motion, Ms. O'Neil argued that there is a reasonable expectation of coverage because Ray Epling, Edgewater's owner, was told verbally by his local agent that coverage existed for the underlying complaint.[1] (Doc. No.

---

[1] The insured in this case – Edgewater – does not, itself, raise or address this argument in its brief. Furthermore, "the doctrine of reasonable expectations is limited to those instances . . . in which the *policy language* is ambiguous." Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488, 496 (W. Va. 1987)(emphasis added). Because the policy at issue is not ambiguous, the court will not apply this rule of construction.

24 at 1-2.)  She also cited authorities which she contended indicate that her allegations constitute an "occurrence" such that coverage exists under the policy.  (Id. at 3-4.)  State Auto then filed a reply, making the additional argument that no evidence supports a finding that Mr. Chapman was an employee of Edgewater.  (Doc. No. 26.)

## II.  Standard of Review

Turning to the issue of summary judgment, Rule 56 of the Federal Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the burden of establishing that there is no genuine issue as to any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  As the United States Supreme Court of Appeals stated in Celotex, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

Once the moving party has met its burden, the burden then shifts to the nonmoving party to produce sufficient evidence for

a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.  Significantly, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Id. at 256.  Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III.  Analysis

In this diversity action, state law controls the court's construction of the insurance policy.  In re Nantahala Village, Inc., 976 F.2d 876, 880-81 (4th Cir. 1992).  "As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy."  Aetna Cas. & Sur. Co. v. Pitrolo, 342 S.E.2d

156, 160 (W. Va. 1986). In making this determination, the court need not adjudicate the underlying facts. West Virginia Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 490 (W. Va. 2004). Significantly, "an insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers." State Auto. Mutual Ins. Co. v. Alpha Engineering Serv. Inc., 542 S.E.2d 876, 879 (W. Va. 2000). See also Stanley, 602 S.E.2d at 494.

Under Stanley, the court's inquiry should be focused on the allegations of the underlying complaint, rather than the facts supporting those allegations. The court need not consider whether Mr. Chapman was an employee of Edgewater because the State court complaint is not reasonably susceptible of an interpretation that coverage exists under the policy.

As noted above, the policy issued to Edgewater provides coverage for certain bodily injury and property damage caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. No. 1 Ex. B at 33.) Although the policy at issue does not define "accident," that unambiguous term is readily defined in West Virginia case law as a "chance event or event arising from unknown causes." Stanley, 602 S.E.2d at 492. The Supreme Court of Appeals of West Virginia has

-6-

elaborated that, for an event to be an accident, "both the means and the result must be unforeseen, involuntary, unexpected, and unusual." Id. (citing State Bancorp, Inc. v. U.S. Fidelity and Guar., 483 S.E.2d 228, 234 (W. Va. 1997)(internal citations omitted)). Further, the policy specifically excludes coverage for injuries and damages expected or intended from the standpoint of the insured. (Doc. No. 1 Ex. B at 21.)

In Smith v. Animal Urgent Care, Inc., 542 S.E.2d 827 (W. Va. 2000), the West Virginia Supreme Court affirmed the grant of summary judgment to a commercial general liability insurer on the question of whether the insurer was obligated to indemnify and defend an insured in connection with an underlying sexual harassment claim. A former employee filed suit against a veterinary clinic and one of its veterinarians, alleging sexual harassment, wrongful discharge, and intentional infliction of emotional distress. Id. at 828. The clinic sought coverage under a policy containing provisions nearly identical to those relevant to the instant case. Because the plaintiff alleged a negligence-oriented theory of recovery against it, the clinic contended that coverage was not precluded by the plaintiff's sexual harassment allegations. Id. at 832.

The Smith court reasoned that "[s]exual harassment, and its inherently non-accidental nature, remain[ed] the crux of the case" regardless of whether negligence was alleged against the

clinic.  Id.  The court therefore concluded that, in an insurance liability policy, a claim based on sexual harassment did not come within the definition of "occurrence."  Id.  Because the lower court had relied upon the policy's intentional acts exclusion, the Smith court proceeded to address the issue, but noted that its analysis could end there based on the lack of an "occurrence" necessary to trigger coverage.  Id.

With respect to the clinic's argument that the negligence allegations against it should not be subject to the intentional acts exclusion, the court explained that

> [a]n analogous argument was rejected by this Court in [Horace Mann Insurance Co. v. Leeber, 376 S.E.2d 581 (1988)], where the insured focused on the inclusion of allegations concerning the negligent seduction of the assaulted student involved in an attempt to secure coverage.  Borrowing from a Maryland decision, we stated that "allegations of 'negligence' in the complaint are 'a transparent attempt to trigger insurance coverage by characterizing allegations of [intentional] tortious conduct under the guise of "negligent" activity.'"

Smith, 542 S.E.2d at 833 (quoting Leeber, 376 S.E.2d at 587)(internal citations omitted).

Ms. O'Neil contends that Smith is inapposite because the negligence-oriented theory of recovery against the veterinary clinic was not one for negligent *hiring*, specifically.  (Doc. No. 24 at 4.)  She further argues that the more recent case of Columbia Cas Co. v. Westfield Ins. Co., 617 S.E.2d 797 (W. Va. 2005), supports a finding of an "occurrence" under the policy. In that case, the West Virginia Supreme Court determined that the

-8-

suicidal deaths of inmates constituted "occurrences" where the insured, a sheriff and county commission, were alleged to have committed negligent acts and omissions leading to and permitting the suicides.  Id. at 797.  While the reasoning employed in Columbia seems to be at least somewhat in conflict with the holding in Smith, the facts at issue in Smith are more closely aligned with those before this court.  Moreover, the Columbia opinion, which answered a question certified by the Fourth Circuit Court of Appeals, did not address the applicability of an intentional acts exclusion.[2]

Although the issue is not raised by the parties, the court must note one additional point.  The liability policy issued to Edgewater provides limited coverage for "bodily injury," defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  (Doc. No. 1 Ex. B at 31.)  Ms. O'Neil's complaint alleges mental and emotional injuries, but no bodily injuries resulting from Mr. Chapman's conduct.  (Doc. No. 1 Ex. A.)  In Smith and other cases, the West Virginia Supreme Court has drawn a clear distinction between "bodily injury" and "personal injury," declaring that "in an insurance liability policy, purely mental

---

[2] Although the court acknowledged that its inquiry was circumscribed by the language of the certified question, the Columbia court noted via footnote that "no other language in the policy appears to be inconsistent with our holding and reasoning stated herein."  Columbia, 617 S.E.2d at 799 n.2.

or emotional harm that arises from a claim of sexual harassment and lacks physical manifestation does not fall within a definition of 'bodily injury' which is limited to 'bodily injury, sickness, or disease.'"  Smith, 542 S.E.2d at 831.  See also Tackett v. American Motorists Ins. Co., 584 S.E.2d 158, 166 (W. Va. 2003).  Accordingly, Ms. O'Neil's failure to allege "bodily injury" within the meaning of the policy also compels the court to find that coverage under the policy does not exist with respect to the underlying complaint.

### IV.  Conclusion

Plaintiff has demonstrated that there are no material facts in dispute and that it is entitled to judgment as a matter of law.  Accordingly, in a separate judgment order to be entered contemporaneously with this opinion, the court **GRANTS** plaintiff's motion for summary judgment (Doc. No. 18) and **DENIES** defendant Edgewater's cross-motion for summary judgment (Doc. No. 25).  Pursuant to 28 U.S.C. § 2201, the court **FINDS** and **DECLARES** that no coverage or duty to defend exists under the policy at issue with respect to the injuries alleged by defendant Susan O'Neil in the underlying action filed in the Circuit Court of Putnam County.

It is **SO ORDERED** this 29th day of April, 2010.

ENTER:

David A. Faber
Senior United States District Judge